UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRBORNE AMERICA, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>KENWAY COMPOSITES, a Maine corporation; CPK MANUFACTURING, LLC, a Delaware limited liability company; KENWAY CORPORATION, a Maine corporation; CREATIVE PULTRUSIONS, a Pennsylvania corporation; HILL & SMITH HOLDINGS, PLC, a United Kingdom public limited company; KENNETH G. PRIEST II, an individual; SUSAN PRIEST, an individual; MICHAEL PRIEST, an individual; TERRY PRIEST, an individual; IAN KOPP, an individual; GEMINI INSURANCE COMPANY, a Delaware corporation; BERKLEY INSURANCE COMPANY, a Delaware corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 20-CV-2208 JLS (WVG)<br><br>**ORDER GRANTING DEFENDANTS GEMINI INSURANCE COMPANY AND BERKLEY INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 8) |

Presently before the Court is Defendants Gemini Insurance Company ("Gemini") and Berkley Insurance Company's ("Berkley") (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 8), as well as Plaintiff Airborne America, Inc.'s ("Plaintiff") Opposition thereto ("Opp'n," ECF No. 10) and Defendants' Reply in support thereof ("Reply," ECF No. 13).  The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 15.  Having carefully reviewed Plaintiff's Complaint ("Compl.," ECF No. 1-4), the Parties' arguments, and the law, the Court **GRANTS** Defendants' Motion.

## BACKGROUND[1]

This action arises out of Plaintiff's "catastrophic loss of a[n over $45,000,000] investment into a business that barely opened its doors before being forced to close in 2017."  Compl. ¶ 1.  Plaintiff invested in developing an indoor skydiving facility in downtown San Diego (the "Project").  *Id.* ¶ 3(a).  Aerolab, LLC ("Aerolab") designed the Project, which consisted of two wind tunnels in a 10,000 square foot building.  *Id.* ¶¶ 26–27.  Each tunnel contained, among other things, a clear tube with a skydiving platform, a large fan, and four turning vanes designed to direct the air inside the tunnel and support the skydivers.  *Id.* ¶¶ 27–30.  The large fan had a 2,700-pound nose cone assembly, which was designed to smooth and direct the airflow.  *Id.* ¶ 3 n.2.  Aerolab hired numerous subcontractors to construct the Project, one being Kenway Corporation ("Kenway").[2]  *Id.* ¶ 11.  Gemini issued Kenway an insurance policy with a policy limit of $1,000,000.  *Id.* ¶ 75; Mot. at 1.  Berkley is Gemini's manager and is defending Kenway in a separate negligence action.  Compl. ¶¶ 18, 35.

Kenway's responsibilities in the Project included manufacturing the turning vanes and the large fan's nose cone.  *Id.* ¶¶ 30–31.  Together, Aerolab and Kenway installed the

---

[1] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the present Motion.  *See Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] Kenway is another named defendant in this action.  *See generally* Compl.

turning vanes. *Id.* ¶ 32. On December 7, 2016, the turning vanes in Wind Tunnel One exploded, which shut down the Project for several months. *Id.* ¶¶ 32–33. Kenway allegedly admitted to Defendants that it should have continued to analyze the buckling of the turning vanes, and that the "buckling, combined with the inherent design flaw of the blind leading edge joint[, led] to the catastrophic failure." *Id.* ¶ 35 (emphasis omitted).

Following this incident, Kenway and its officers[3] allegedly schemed to enrich themselves by selling Kenway's assets to Hill & Smith ("Hill") and its subsidiary, Creative Pultrusions ("Creative").[4] *Id.* ¶¶ 36–37. As part of the asset purchase agreement, Hill and Creative would manufacture new turning vanes for the Project, while Kenway would retain liability for the turning vanes' design. *Id.* ¶ 41. Additionally, Kenway would process the liability claim for the turning vane failure with Berkley. *Id.*

Plaintiff claims that Kenway "made a secret insurance claim to pay for replacement turning vanes and subsequently planned to secretly pocket the money." *Id.* ¶ 37. Mr. Kopp and Mr. Priest, officers of Kenway, allegedly swore under oath to Defendants that the turning vane incident was "the result of Kenway's (and no one else's) 'errors and omissions.'" *Id.* ¶ 45. Subsequently, Defendants paid Kenway $470,000 on its insurance claim related to the turning vane incident. *See id.* ¶ 46. Kenway in turn planned to use the insurance payout to hire Creative on a fixed price contract to manufacture replacement turning vanes for the Project. *Id.* ¶¶ 41, 45–46; *see also* Mot. at 4. As a result of Defendants' payment, Kenway released the remainder of the $1,000,000 policy, and Kenway excused Defendants from any further liability to Kenway related to the turning vane incident. Compl. ¶¶ 44, 47. Kenway allegedly further attempted to limit it and

---

[3] Throughout its Complaint, Plaintiff refers to Kenway's officers as the "Individual Defendants." *See generally* Compl. The Individual Defendants are Kenneth G. Priest II, Susan Priest, Terry Priest, and Ian Kopp, all of whom Plaintiff claims are an alter ego of Kenway. *See id.* ¶ 13. Plaintiff alleges Kenway and the Individual Defendants "concocted a plan to further enrich themselves and even potentially cut off Plaintiff's rights while they were at it." *Id.* ¶ 36.

[4] Plaintiff has also named Hill and Creative as defendants. *See generally* Compl.

Defendants' exposure for the turning vane incident by presenting Plaintiff with an agreement stating that Kenway would be released from any further claims resulting from the design or failure of the turning vanes. *Id.* ¶¶ 48, 51. The release stated, in part:

> "[Plaintiff] acknowledges that Kenway Corporation is fulfilling all its warranty obligations associated with the Airborne San Diego original turning vane failure by its design, testing and supply of these modified replacement vanes at Kenway Corporation's costs. In exchange for the design, testing and supply of these replacement vanes, [Plaintiff] releases Kenway from any additional present or future claims, damages, or liabilities of any kind relating to the failure or to the design of the vanes."

*Id.* ¶ 51 (emphasis omitted).

Plaintiff claims that Defendants raised concerns to Kenway about the release because it was "'narrow' and did not include 'typical' release language." *Id.* ¶ 53. But Kenway informed Defendants it desired to balance "thorough protection" against "provoking litigation." *Id.* ¶ 54. Kenway allegedly represented to Plaintiff that Defendants "w[ould] NOT allow [Kenway] to start the warranty replacement process without this documentation in place." *Id.* ¶ 55 (emphasis in original). On March 6, 2017, Plaintiff signed the release, allegedly without knowledge any company but Kenway would be working on the Project. *Id.* ¶ 57–58. On June 12, 2017, the Project experienced a further catastrophic setback. The nose cone in Tunnel One, designed and manufactured by Kenway and Aerolab, blew apart. *Id.* ¶¶ 60–61. Plaintiff alleges that the nose cone weighed three times its intended weight. *Id.* ¶ 60. This incident occurred "only days" after rebalancing work had been done in Tunnel One. *Id.* ¶ 64. According to Plaintiff, it would have been much more careful about the rebalancing had it known that Kenway had admitted to Defendants that "its design and manufacturing work on the [P]roject had been negligent." *Id.* ¶ 63.

///

///

The nose cone incident proved to be the Project's "knockout blow." *Id.* ¶ 66. Plaintiff learned it would cost an additional $4,500,000 to $7,000,000 to repair the damage. *Id.* By August 2017, Plaintiff closed its doors and defaulted on its loans. *Id.* ¶¶ 68–69.

Plaintiff filed this action in the Superior Court of California, County of San Diego, on September 21, 2020. *See* ECF No. 1 ("Not. of Removal") at 1. Plaintiff's Complaint alleges two claims against Defendants: (1) intentionally fraudulent transfer in violation of California Civil Code § 3439.10 and 14 Maine Revised Statutes § 3571 *et seq.*; and (2) common-law fraudulent transfer.[5] *See generally* Compl. On November 12, 2020, Kenway and Creative removed to this Court, based on diversity jurisdiction.[6] *See generally* Not. of Removal. Defendant filed the instant Motion on December 7, 2020. *See* ECF No. 8.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[5] Plaintiff's Complaint originally included a claim for negligent misrepresentation; however, Plaintiff moved to dismiss without prejudice its cause of action for negligent misrepresentation. *See* ECF No. 35. The Court granted Plaintiff's motion. *See* ECF No. 36.

[6] In their Notice of Removal, Kenway and Creative note that Plaintiff is incorrect about the location of some of the defendants' places of incorporation. *See* Not. of Removal ¶¶ 7–9. However, because Plaintiff is a Nevada corporation and no defendant is a resident of Nevada, diversity jurisdiction still exists. *Id.* ¶ 10.

*Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendants contend that Plaintiff lacks standing to sue them for both intentionally fraudulent transfer and common-law fraudulent transfer. *See* Mot. at 6, 10. The Court notes that this argument is properly addressed through a Rule 12(b)(6) motion to dismiss.

///

///

///

*See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015). Because Plaintiff's standing is dispositive here, the Court only addresses this argument.[7]

## I. Intentionally Fraudulent Transfer

In Count I of its Complaint, Plaintiff alleges intentionally fraudulent transfer against Defendants. *See* Compl. ¶ 70. Plaintiff brings this claim pursuant to California Civil Code § 3439.10 and 14 Maine Revised Statutes §§ 3575, 3576, and 3578.[8] *Id.* Specifically, Plaintiff alleges that Defendants and Kenway "entered into an agreement, as joint conspirators, with the intent of voiding out the balance of the Berkley policy to the detriment of a known creditor, [Plaintiff]." *Id.* ¶ 74. According to Plaintiff, the decision to surrender and cancel the policy was designed to save Gemini more than $500,000 in loss, which should have been available to Plaintiff. *Id.* ¶ 75. Plaintiff now "seeks to set aside any intentionally fraudulent transfer of the insurance proceeds and released policy limits" as between Defendants and Kenway. *Id.* ¶ 83.

Defendants assert that because there is no privity of contract between Plaintiff and Defendants, Plaintiff lacks standing "to resolve any types of rights and obligations owed under the liability policy issued to Kenway." Mot. at 6 (citing *Royal Indem. Co. v. United Enters., Inc.*, 162 Cal. App. 4th 194, 211 (2008)). Plaintiff counters that it is not seeking to resolve any rights or obligations under the policy, but rather is suing based on Defendants "conspiring with and aiding and abetting Kenway's plans to fraudulently transfer assets." Opp'n at 1. Plaintiff further contends that *Potter v. Alliance United Insurance Co.*, 37 Cal.

///

---

[7] Defendants also contend that the claims should be dismissed because the Complaint fails to allege fraudulent transfer and fails to meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). *See* Mot. at 7, 9 (citing *In re Irving Tanning Co.*, 555 B.R. 70, 80 (Bankr. D. Me. 2016)).

[8] California Civil Code § 3439.10(b) provides that "[a] claim in the nature of a claim under this chapter is governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred." Because Kenway, the debtor, has its principal place of business in Maine and is incorporated in Maine, *see* Compl. ¶¶ 11, 21, Plaintiff has properly alleged claims under 14 Maine Revised Statutes §§ 3571 *et seq.*

App. 5th 894 (2019), "expressly allows a third party to pursue a fraudulent transfer suit against an insurance carrier." Opp'n at 2.

"The standing doctrine determines 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *U.S. v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Unless there exists a recognized exception, a party not in privity of contract with an insurer lacks standing to resolve rights and obligations under an insurance policy. *See Otay Land Co. v. Royal Indem. Co.*, 169 Cal. App. 4th 556, 564 (2008).  Despite Plaintiff's arguments to the contrary, the Court agrees with Defendants that "Plaintiff is seeking to resolve obligations owed under the policy." Opp'n at 1.  This is evidenced by the fact that Plaintiff seeks to set aside Defendants' payment to Kenway to resolve the turning vane claim.  Compl. ¶ 83. Plaintiff alleges that Kenway and Berkley, on behalf of Gemini, "entered into an agreement with the intent to void out the balance of [Kenway's insurance] policy." *Id.* ¶ 73. Generally, as a third party, Plaintiff cannot challenge Defendants' payment to its insured, Kenway. *See San Diego Housing Comm'n v. Indus. Indem. Co.*, 95 Cal. App. 4th 669, 692 (2002) ("A third party claimant cannot bring an action upon a duty owed only to the insured . . . without an assignment of the cause of action for breach of such duty."); *Cowley v. Tex. Snubbing Control*, 812 F. Supp. 1437, 1444–45 (S.D. Miss. 1992) (finding a third party has no standing to challenge a settlement agreement between an insurer and an insured). *See generally Couch on Insurance* 3d § 104:6 (2021) ("Where claimants do not have a right to sue an insurer directly, it necessarily follows that they cannot object to the insurer's performance of its obligations under the contract of insurance.").  Because Plaintiff is not a party to the insurance policy, it only has standing to sue Defendants if a recognized exception applies.  Therefore, the Court next will examine whether an exception applies here.

"As a general rule, a third party may directly sue an insurer only when there has been an assignment of rights by, or a final judgment against, the insured." *Reynolds v. Shure*, 148 F. Supp. 3d 928, 934–35 (E.D. Cal. 2015) (quoting *Shaolian v. Safeco Ins. Co.*, 71 Cal.

App. 4th 268, 271 (1999)).  A third party may also assert a claim directly against an insurer where the insured's liability insurance provides for medical payments coverage should someone be injured by the insured, or where the insurer is seeking declaratory relief against a third-party claimant.  *Royal Indem.*, 162 Cal. App. 4th at 205–06.  Finally, a third party "may sue the insurer as a third-party beneficiary utilizing traditional contract principles." *Harper v. Wausau Ins. Co.*, 56 Cal. App. 4th 1079, 1086 (1997).  But Plaintiff does not allege there has been an assignment of rights or that Defendants' insurance provided for medical payments coverage.  *See generally* Compl.  Nor have Defendants sought declaratory relief, and Plaintiff has not received a final judgment against Kenway.  Nor does Plaintiff allege that it is a third-party beneficiary of the policy.  *See generally id.*  Accordingly, none of the recognized exceptions apply.

Plaintiff relies on *Potter*, 37 Cal. App. 5th 894, in support of its contention that a third party may directly sue an insurance carrier for fraudulent transfer.  Opp'n at 2.  But Plaintiff's reliance is misplaced.  *Potter* does not stand for the proposition that a third party has an automatic right to sue an insurer for fraudulent transfer.  True, the third-party claimant in *Potter* succeeded on a fraudulent transfer theory against an insurer.  37 Cal. App. 5th at 911.  However, there are two crucial differences between this case and *Potter*.  First, the insured debtor in *Potter* actually transferred an asset to the insurer—his bad faith failure to settle claim.  *Id.* at 908.  Plaintiff does not allege Kenway transferred an asset to Defendants.  *See generally* Compl.  Second, and more fundamentally, the third-party claimant in *Potter* was a judgment creditor, *see* 37 Cal. App. 5th at 900, and therefore was entitled to sue the insurer directly under California law.  *See Royal Indem.*, 162 Cal. App. 4th at 205. Plaintiff is not.  The Court thus finds Plaintiff's reliance on *Potter* unpersuasive.  Plaintiff lacks standing to assert a claim against Defendants for intentionally fraudulent transfer.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Count I of Plaintiff's Complaint.

///

## II. Common-Law Fraudulent Transfer

In addition to its intentionally fraudulent transfer claim, Plaintiff asserts a common-law fraudulent transfer claim against Defendants in Count III of its Complaint. Compl. ¶ 97. "Case law has established the remedies specified in the [UFTA][9] are cumulative and not the exclusive remedy for fraudulent conveyances." *Berger v. Varum*, 35 Cal. App. 5th 1013, 1019 (2019). Therefore, a cause of action for common-law fraudulent transfer survives alongside its statutory counterpart in California. *Id.* However, unlike the UFTA, California common law has an additional requirement that the creditor "have a specific lien on the property or . . . prosecute[] his claim to judgment." *In re Kalt's Estate*, 16 Cal. 2d 807, 811 (1940); *see also Moore v. Schneider*, 196 Cal. 380, 387 (1925) (discussing how it is "universally held" that for a creditor to have a claim for fraudulent conveyance, it must hold a lien on the property or reduce its claim to judgment).

Unlike Plaintiff's intentionally fraudulent transfer claim, Plaintiff is not attempting to resolve any rights or obligations under the policy through its common-law fraudulent transfer claim. Rather, Plaintiff seeks punitive damages, compensatory damages, and other costs. *See* Compl. ¶ 118. Nonetheless, Defendants contend that Plaintiff lacks standing because it is not a judgment creditor and does not have a lien on Kenway's property. Mot. at 10. Plaintiff counters that "a defrauded creditor with no judgment lien still ha[s] various remedies to collect [its] debt." Mot. at 5 (citing *Wagner v. Trout*, 124 Cal. App. 2d 248, 254 (1954)).

California courts as far back as the 1800s have held that a defrauded creditor must have a lien on the property or reduce their claim to judgment to assert a claim for common-law fraudulent conveyance. *See, e.g.*, *Brown v. Campbell*, 100 Cal. 635, 644 (1893). *Wagner*, on which Plaintiff relies, appears to be an outlier in this line of cases. *Wagner*

---

[9] While California calls its intentionally fraudulent transfer statute the "Uniform Voidable Transactions Act," *see* Cal. Civ. Code § 3439, California courts appear to use "UVTA" and "UFTA" interchangeably. *Compare Berger*, 35 Cal. App. 5th at 1019 (using the term "UVTA"), *with Wisden v. Super. Ct.*, 124 Cal. App. 4th 750, 759 (2004) (using the term "UFTA"). For clarity's sake, the Court will refer to California's fraudulent transfer statute as the UFTA.

stated that a defrauded creditor possesses a number of options to recover fraudulently conveyed property, such as attaching the property, having it sold under execution after obtaining a judgment, or having the transfer declared void through an equitable action. 124 Cal. App. 2d at 254. With that said, it does not appear that any California court has applied this statement in *Wagner* as law.[10] Rather, California courts continue to recognize that a creditor must have a judgment or a lien in order to assert a claim against a debtor for common-law fraudulent transfer. *See, e.g.*, *Wisden*, 124 Cal. App. 4th at 759 ("[P]rior to the passage of the UFTA and its predecessor statute,[11] it was necessary for a creditor to obtain a judgment, or a specific lien on the property, before an action could be brought to set aside a fraudulent transfer." (citation omitted)); *Cortez v. Vogt*, 52 Cal. App. 4th 917, 930 n.12 (1997) (same). Given that Plaintiff does not have a judgment or a lien, Plaintiff lacks standing under California law to assert a cause of action for common-law fraudulent conveyance.

Even assuming, *arguendo*, that the statement in *Wagner* is not merely dicta,[12] the fact remains that Plaintiff's common-law fraudulent transfer claim does not seek "to have the transfer declared void as to [it] and the property so transferred subjected to [its] claims as a creditor." 124 Cal. App. 2d at 254. Rather, Plaintiff's common-law fraudulent transfer claim seeks punitive damages, compensatory damages, and other costs. *See* Compl. ¶ 118. While California courts have held that a plaintiff asserting a common-law fraudulent transfer claim may recover punitive and consequential damages, these courts have only

---

[10] In a later decision, the California Court of Appeal characterized *Wagner* as standing for the proposition that "a defrauded creditor ha[s] various remedies to collect her debts, including an equitable action to have the transfer declared void and the property subjected to her claims." *Wisden*, 124 Cal. App. 4th at 756 n.6. However, *Wisden* dealt with whether a judgment creditor is entitled to a jury trial for a fraudulent transfer claim under the UFTA. *See id.* at 753–54. The court only cited *Wagner* to observe that *Wagner* says nothing about the right to a jury trial. *See id.* at 756 n.6.

[11] As Plaintiff notes in its Opposition, the 1939 Uniform Fraudulent Conveyance Act predated the UFTA in California. Opp'n at 5 (citing *Cortez*, 52 Cal. App. 4th at 930).

[12] While dicta may be considered persuasive, it is not considered precedential. *Best Life Assur. Co. of Cal. v. C.I.R.*, 281 F.2d 828, 834 (9th Cir. 2002) (citing *Black's Law Dictionary* 1100 (7th ed. 1999)).

recognized this remedy where the plaintiff is a judgment creditor. *See Berger*, 35 Cal. App. 5th at 1021, 1024. Plaintiff is not. Thus, even if this Court followed *Wagner*'s interpretation of California common law, Plaintiff does not seek a cognizable remedy. *See Henry v. Radio One, Inc.*, No. CV 08-2717 PSG (CTx), 2008 WL 11338294, at *4 (C.D. Cal. June 18, 2008) (dismissing claim because plaintiff had no remedy available to her); *Altmann v. Wells Fargo Bank, N.A.*, No. 1:16-cv-01121-LJO-SKO, 2016 WL 4943924, at *4 (E.D. Cal. Sept. 16, 2016) (same); *see also Kenney v. City of San Diego*, No. 13cv248-WQH-JLB, 2014 WL 2930871, at *2 (S.D. Cal. June 30, 2014) ("Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory." (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990))).

Therefore, for two independent reasons—Plaintiff's lack of standing and the unavailability of the relief it seeks—the Court **GRANTS** Defendants' Motion to Dismiss as to Count III of Plaintiff's Complaint.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint in its entirety as to Defendants Gemini Insurance Company and Berkley Insurance Company. Plaintiff **MAY FILE** an amended complaint within thirty (30) days of the electronic docketing of this Order. If Plaintiff fails to file an amended complaint within the allotted time, this case will proceed against the remaining defendants.

**IT IS SO ORDERED.**

Dated: August 16, 2021

Hon. Janis L. Sammartino
United States District Judge